BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director
Federal Programs Branch

JASON LEE (CA Bar No. 298140)
Trial Attorney
United States Department of Justice
Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20001
Telephone:  (202) 514-3367
Facsimile:   (202) 616-8470
Email:        Jason.Lee3@usdoj.gov

*Attorneys for the United States of America*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| AMHET DOĞAN, individually and on behalf of his deceased son, FURKAN DOĞAN; and HIMET DOĞAN, individually and on behalf of her deceased son, FURKAN DOĞAN,<br><br>Plaintiffs,<br><br>v.<br><br>EHUD BARAK,<br><br>Defendant. | No. 2:15-CV-08130-ODW (GJSx)<br><br>Assigned to the Honorable Otis D. Wright II<br><br>**SUGGESTION OF IMMUNITY BY THE UNITED STATES** |

# INTRODUCTION

The United States respectfully submits this Suggestion of Immunity to inform the Court of the Executive Branch's determination regarding the immunity of former Israeli Minister of Defense Ehud Barak in this action.[1] This case implicates principles of foreign official immunity, and the United States has strong interests in ensuring the correct application of those principles as accepted by the Executive Branch. The Department of State has made the determination, to which the Court must defer, that Barak is immune from suit under the common law. *See* Attached Exhibit. In arriving at this determination, the United States emphasizes that it expresses no view on the merits of Plaintiffs' claims.

# BACKGROUND

Plaintiffs Ahmet and Hikmet Doğan bring suit individually and on behalf of their deceased son, Furkan Doğan ("Doğan"), who was killed by Israeli Defense Forces ("IDF") during their interception of six vessels bound for Gaza in 2010. Compl. ¶¶ 1–3. They proffer claims under the Torture Victim Protection Act ("TVPA"), Pub. L. No. 102–256, 106 Stat. 73 (codified at 28 U.S.C. § 1350 note), the Alien Tort Statute, 28 U.S.C. § 1350, and the Anti-Terrorism Act, 18 U.S.C. § 2331 et seq. Compl. ¶¶ 59–125. In support of their claims, Plaintiffs allege that in planning, directing, and ordering the IDF operation and exercising command responsibility, "Barak knew or should have known that his subordinates . . . had committed, were committing, or were about to commit human rights abuses . . . [and] failed to prevent the abuses." *Id.* ¶¶ 63, 70, 78, 84, 90, 99, 110, 121. Plaintiffs seek compensatory and punitive damages. *Id.* ¶ 1.

---

[1] The United States submits this filing pursuant to 28 U.S.C. § 517, which provides that "any officer of the Department of Justice[] may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

1

Suggestion of Immunity by the United States
Case No. 2:15-cv-08130-ODW (GJSx)

On December 31, 2015, the State of Israel formally requested that the Department of State file a Suggestion of Immunity on behalf of Barak. *See* Decl. of Christopher M. Egleson in Supp. of Def.'s Mot. to Dismiss Ex. H, ECF No. 26 [hereinafter Diplomatic Note from Israel]. The United States respectfully submits this Suggestion of Immunity to inform the Court of the Executive Branch's determination regarding Barak's immunity from suit.

## ARGUMENT

### I. THE EXECUTIVE BRANCH HAS DETERMINED THAT BARAK IS IMMUNE FROM SUIT

#### A. The Executive Branch's Foreign Official Immunity Determinations Are Controlling

The conduct of the Nation's foreign affairs is committed to the political branches. Unlike sovereign immunity determinations with respect to foreign states, which are governed by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 et seq., the FSIA does not displace "the State Department's role in determinations regarding individual official immunity." *Samantar v. Yousuf*, 560 U.S. 305, 323 (2010). The Supreme Court in *Samantar* explained that, prior to the enactment of the FSIA, a two-step procedure, which developed under the common law, existed for resolving a foreign state's claim of sovereign immunity. *Id*. at 311. A foreign state sued in a court in the United States could request a "Suggestion of Immunity" from the Department of State. *Id*. If the Executive Branch then filed a Suggestion of Immunity, the court "surrendered its jurisdiction." *Id*. If the Executive Branch declined to file a Suggestion of Immunity, the court "had authority to decide for itself whether all the requisites for such immunity existed." *Id*. (quoting *Ex parte Peru*, 318 U.S. 578, 587 (1943)). In making that decision, "a district court inquired 'whether the ground of immunity is one which it is the established policy of the [Department of State] to recognize.'" *Id*. at 312 (quoting *Republic of Mexico v. Hoffman*, 324 U.S. 30, 36 (1945)) (alteration in original). The Court further explained that "the same two-step procedure was typically followed when a foreign official asserted

immunity." *Id*. Because it concluded that Congress did not codify standards governing the immunity of foreign officials, the Supreme Court held that the common law, two-step procedure remains in place for determinations of foreign official immunity. *Id*. at 323–25.

As courts have long recognized, the separation of powers requires courts to defer to the Executive Branch's determination regarding foreign official immunity. *See Habyarimana v. Kagame*, 696 F.3d 1029, 1032 (10th Cir. 2012) ("We must accept the United States' suggestion that a foreign head of state is immune from suit . . . 'as a conclusive determination by the political arm of the Government that the continued [exercise of jurisdiction] interferes with the proper conduct of our foreign relations.'" (quoting *Ex Parte Republic of Peru*, 318 U.S. at 589) (first alteration added, second alteration in original)); *Matar v. Dichter*, 563 F.3d 9, 15 (2d Cir. 2009) ("Here, the Executive Branch has urged the courts to decline jurisdiction over appellants' suit, and under our traditional rule of deference to such Executive determinations, we do so."). Indeed, as the Court of Appeals for the Seventh Circuit observed in *Ye v. Zemin*, 383 F.3d 620 (2004), "'[i]t is a guiding principle in determining whether a court should [recognize a suggestion of immunity] in such cases, that the courts should not so act as to embarrass the executive arm in its conduct of foreign affairs . . . by assuming an antagonistic jurisdiction.'" *Id*. at 626 (quoting *Hoffman*, 324 U.S. at 35) (alteration in original)).

In the absence of a controlling statute, the common law governing foreign official immunity constitutes a "rule of substantive law" requiring courts to "accept and follow the executive determination" concerning a foreign official's immunity from suit. *Hoffman*, 324 U.S. at 36; *see also Spacil v. Crowe*, 489 F.2d 614, 619 (5th Cir. 1974) ("When the executive branch has determined that the interests of the nation are best served by granting a foreign sovereign

3

immunity from suit in our courts, there are compelling reasons to defer to that judgment without question.").[2]

The Court of Appeals for the Ninth Circuit consistently has acknowledged and followed this practice. *See, e.g.*, *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1126 (9th Cir. 2010) (noting that if the Executive Branch filed a Suggestion of Immunity, "the district court dismissed the case for lack of jurisdiction"); *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 705 (9th Cir. 1992) ("When the State Department issued a suggestion of immunity in a particular case, the court followed it . . . ."); *Chuidian v. Philippine Nat. Bank*, 912 F.2d 1095, 1100 (9th Cir. 1990) (discussing pre-FSIA practice and noting that "the courts treated such 'suggestions' as binding determinations, and would invoke or deny immunity based upon the decision of the State Department"), *abrogated by Samantar v. Yousuf*, 560 U.S. 305 (2010); *Hassen v. Nahyan*, No. CV 09-01106 DMG MANX, 2010 WL 9538408, at *5 (C.D. Cal. Sept. 17, 2010) ("Because the State Department has [filed a Suggestion of Immunity], [the defendant] is entitled to immunity.").[3]

---

[2] *See also Se. Leasing Corp. v. Stern Dragger Belogorsk*, 493 F.2d 1223, 1224 (1st Cir. 1974) (rejecting argument that district court "erred . . . in accepting the executive suggestion of immunity without conducting an independent judicial inquiry"); *Isbrandtsen Tankers, Inc. v. President of India*, 446 F.2d 1198, 1201 (2d Cir. 1971) ("[O]nce the State Department has ruled in a matter of this nature, the judiciary will not interfere." (deferring to Department of State foreign sovereign immunity determination)); *Rich v. Naviera Vacuba, S.A.*, 295 F.2d 24, 26 (4th Cir. 1961) ("We think that the doctrine of the separation of powers under our Constitution requires us to assume that all pertinent considerations have been taken into account by the Secretary of State in reaching his conclusion." (deferring to Department of State foreign sovereign immunity determination)).

[3] The cases of *In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 978 F.2d 493 (9th Cir. 1992) ("Estate I"), and *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467 (9th Cir. 1994) ("Estate II"), are not to the contrary. The United States did not file a Suggestion of Immunity in either case. Moreover, the Ninth Circuit rejected claims of immunity in those cases because the claims clearly pertained to activities outside the scope of the defendants' official capacities. In *Estate I*, the Ninth Circuit determined that the defendant "admitted acting on her own authority, not on the authority of the Republic of the Philippines." 978 F.2d at 498; *see id*. at 498 n.10 (defendant's affidavit "declare[d] that she was not a member of the government"). In *Estate II*, the Ninth Circuit confirmed that the defendant had not acted in his official capacity, in part because "the Philippine government[] agree[d] that the suit against [him could] proceed." 25 F.3d at 1472.

Suggestion of Immunity by the United States
Case No. 2:15-cv-08130-ODW (GJSx)

This Court should not follow the analysis of the Court of Appeals for the Fourth Circuit in *Yousuf v. Samantar*, which held that that while the Executive Branch's determination regarding status-based immunity under the common law receives "absolute deference," the Executive's determination regarding conduct-based immunity is not controlling, but "carries substantial weight." 699 F.3d 763, 773 (4th Cir. 2012). The Fourth Circuit's approach constitutes legal error and cannot be reconciled with the Supreme Court's decision in *Samantar*, which itself involved conduct-based immunity. The defendant in that case was a former Somali official. *See Samantar*, 560 U.S. at 308–09, 310 n.5. Under international law, former officials enjoy conduct-based immunities for official acts taken while in office. *See*, *e.g.*, 1 *Oppenheim's International Law* 1043–44 (Robert Jennings & Arthur Watts, eds., 9th ed. 1996). Yet, in concluding that Congress did not intend to alter "the State Department's role in determinations regarding individual official immunity," *Samantar*, 560 U.S. at 323, the Court made no distinction between status- and conduct-based immunity determinations.

And in discussing the Department of State's historic role, the Supreme Court explained categorically that when the Department of State submitted a Suggestion of Immunity, a "district court surrendered its jurisdiction." *Id*. at 311. Indeed, two of the cases cited by the Supreme Court in *Samantar* regarding foreign officials— *Heaney v. Government of Spain*, 445 F.2d 501, 504–05 (2d Cir. 1971), and *Waltier v. Thomson*, 189 F. Supp. 319, 320–21 (S.D.N.Y. 1960)— involved consular officials who had only conduct-based immunity for acts carried out in their official capacity. And in reasoning that Congress did not intend to modify the historical practice regarding individual foreign officials, *see Samantar*, 560 U.S. at 322, the Supreme Court cited a third case, *Greenspan v. Crosbie*, No. 74 Civ. 4734(GLG), 1976 WL 841 (S.D.N.Y., Nov. 23, 1976), in which the district court deferred to the Department of State's recognition of conduct-based immunity of individual foreign officials, *see id*. at *2.

5

Suggestion of Immunity by the United States
Case No. 2:15-cv-08130-ODW (GJSx)

Similarly, the Fourth Circuit's distinction between the deference due to Executive Branch determinations of conduct-based and status-based immunities finds no support in Ninth Circuit case law. Rather, under the common law, when the Executive Branch filed a Suggestion of Immunity, "the courts treated such 'suggestions' as binding determinations, and would invoke or deny immunity based upon the decision of the State Department." *Chuidian*, 912 F.2d at 1100 (describing common law practice); *see also Peterson*, 627 F.3d at 1126 (not distinguishing between conduct-based and status-based immunities); *Siderman de Blake*, 965 F.2d at 705 (same).[4]

These decisions reflect the fact that the Executive Branch's authority to make foreign official immunity determinations, and the requirement of judicial deference to such determinations, flow from the Executive's constitutional responsibility for conducting the Nation's foreign relations, and not just from the more specific constitutional power to recognize diplomats and foreign heads of state on which the Fourth Circuit relied. *See, e.g.*, *Ex parte Peru*, 318 U.S. at 589 (noting that a Suggestion of Immunity "must be accepted by the courts as a conclusive determination by the political arm of the Government" that "continued retention of the vessel interferes with the proper conduct of our foreign relations"). While the scope of foreign state and foreign official immunity is not invariably coextensive, *see Samantar*, 560 U.S. at 321, the basis for recognizing the immunity of current and former foreign officials is that "the acts of the official representatives of the state are those of the state itself, when exercised within the scope of their delegated powers." *Underhill v. Hernandez*, 65 F. 577, 579 (2d Cir. 1895),

---

[4] Although a district court in the Central District of California recently "[found] the reasoning of the Fourth Circuit in [*Samantar*] detailed and persuasive," *Mireskandari v. Mayne*, No. 12-cv-3861-JGB-MRWx, 2016 WL 1165896, at *17 (C.D. Cal. Mar. 23, 2016), the Fourth Circuit's decision constitutes legal error and should not be followed for the reasons discussed above. Moreover, in *Mireskandari*, the United Kingdom did not ask the Department of State to file Suggestions of Immunity on behalf of any of the defendants. Consequently, no Suggestions of Immunity were filed, and the district court considered the Fourth Circuit's opinion without any briefing by the United States regarding the legal errors inherent in that decision.

6

Suggestion of Immunity by the United States
Case No. 2:15-cv-08130-ODW (GJSx)

*aff'd*, 168 U.S. 250 (1897). As a result, suits against foreign officials—whether they are heads of state or lower-level officials—implicate many of the same considerations of comity and respect for other Nations' sovereignty as suits against foreign states. The Executive Branch's constitutional authority over the conduct of foreign affairs thus serves as a foundation for its authority to determine the immunity of foreign officials. In the absence of a governing statute (such as the FSIA with respect to foreign state immunity), it continues to be the Executive Branch's role to determine foreign official immunity from suit. *See, e.g.*, *Ye*, 383 F.3d at 626 ("Our deference to the Executive Branch is motivated by the caution we believe appropriate of the Judicial Branch when the conduct of foreign affairs is involved.").[5]

### B. The Executive Branch Has Determined that Barak Is Immune From Suit

In accordance with the process described above, the Court should dismiss this action because the Executive Branch has determined that Barak is immune from suit. As a general matter, under principles of customary international law accepted by the Executive Branch, a foreign official enjoys immunity from suit based upon acts taken in an official capacity. In making the immunity determination, the Department of State considers, *inter alia*, a foreign government's request (if there is such a request) that the Department of State suggest the

---

[5] The Solicitor General twice argued in briefing before the Supreme Court that the Fourth Circuit's decision on remand in *Samantar* constitutes legal error. On both occasions, however, the Solicitor General urged the Supreme Court not to grant plenary review. On the first occasion, after the Fourth Circuit issued its decision on remand in *Samantar*, the Solicitor General recommended that the Court grant Samantar's petition for certiorari, vacate the court of appeals' judgment, and remand the case to permit the district court to "consider any further determination by the United States on the immunity issue in light of . . . developments and diplomatic discussions between the United States and the recently recognized Government of Somalia." Brief for the United States as Amicus Curiae 22, *Samantar v. Yousuf*, No. 12-1078 (2014) [hereinafter First SG Brief]. The Supreme Court instead denied the petition. On the second occasion, Samantar had sought certiorari after he was found liable following a bench trial, and the court of appeals dismissed Samantar's appeal as moot. Because the Fourth Circuit's ultimate judgment was "consistent with the Executive Branch's determination that [Samantar] [was] not immune," the Solicitor General argued that the Supreme Court "should not grant review simply to correct the erroneous reasoning in the Fourth Circuit's opinion." Brief for the United States as Amicus Curiae at *23, *Samantar v. Yousuf*, No. 13-1361, 2015 WL 412283 (2015) [hereinafter Second SG Brief]. The Supreme Court denied review. *See Samantar v. Yousuf*, 135 S. Ct. 1528 (2015).

official's immunity. Notwithstanding such a request, the Department of State could determine that a foreign official is not immune. That would occur, for example, should the Department of State conclude that the conduct alleged was not taken in an official capacity, as might be the case in a suit challenging an official's purely private acts, such as personal financial dealings. In making that determination, it is for the Executive Branch, not the courts, to determine whether the conduct alleged was taken in a foreign official's official capacity. *See Hoffman*, 324 U.S. at 35 ("It is . . . not for the courts to deny an immunity which our government has seen fit to allow, or to allow an immunity on new grounds which the government has not seen fit to recognize.").

Here, the State of Israel has asked the Department of State to recognize the immunity of Barak. Diplomatic Note from Israel at 1. After careful consideration of this matter, including a full review of the pleadings and other materials relied upon by Plaintiffs, the Department of State has determined that Barak is immune from suit. *See* Ex. 1 (Letter from Brian J. Egan, Legal Adviser, Department of State, to Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, requesting that the United States suggest the immunity of Barak). All of Plaintiffs' claims challenge actions undertaken by Barak in his former role as Israeli Minister of Defense. Indeed, Plaintiffs allege that Barak "is sued in his personal capacity for acts taken in his official capacity." Opp'n to Def.'s Mot. to Dismiss at 25 (ECF No. 37) [hereinafter Opposition]. Plaintiffs note in their Complaint that Barak "held the position of Minister of Defense during the planning of the IDF operation," and contend that "[w]hile serving in that position[,] he planned and commanded the attack and interception of the Flotilla"—an operation that allegedly "resulted in the torture and extrajudicial killing of Furkan Doğan." Compl. ¶¶ 3, 8–9. Plaintiffs reiterate in their Opposition that their challenge stems from Barak's "planning and commanding the attack on the Gaza Freedom Flotilla resulting in the torture and extrajudicial killing of their son." Opp'n at 1.

Accordingly, it is clear that Plaintiffs expressly challenge Barak's exercise of his official powers as the former Minister of Defense of Israel.[6] On their face, acts of defendant foreign officials who are sued for exercising the powers of their office are treated as acts taken in an official capacity, and plaintiffs have provided no reason to question that determination.

Plaintiffs argue in their Opposition that "foreign officials are not entitled to immunity under the common law for violations of *jus cogens* norms,"[7] relying primarily on the Fourth Circuit's decision in *Samantar*. Opp'n at 8–9. There, the Fourth Circuit held that "under international and domestic law, officials from other countries are not entitled to foreign official immunity for *jus cogens* violations, even if the acts were performed in the defendant's official capacity." *Samantar*, 699 F.3d at 777. Plaintiffs' reliance is misplaced. The per se rule of non-immunity adopted by the Fourth Circuit is not drawn from any determination made or principles articulated by the Executive Branch. In *Samantar*, the Solicitor General informed the Supreme Court that "[t]he Executive has not adopted any such categorical exception to immunity," and that the Fourth Circuit's judicially created rule "would substantially impair the Executive's authority and responsibility to make immunity determinations." Second SG Brief at 12; *see also* First SG Brief at 11. The Fourth Circuit's decision is thus inconsistent with the basic principle that Executive Branch immunity determinations establish "substantive law governing the exercise of the jurisdiction of the courts." *Hoffman*, 324 U.S. at 36.

Moreover, the Supreme Court in *Samantar* unanimously held that courts should continue to adhere to official immunity determinations formally submitted by the Executive Branch, just

---

[6] Indeed, Israel has confirmed that "all of the actions of Mr. Barak at issue in the lawsuit were performed exclusively in his official capacity as Israel's Minister of Defense." Diplomatic Note from Israel 1.

[7] A *jus cogens* norm "is a norm accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character." *Siderman de Blake*, 965 F.2d at 714 (quoting Vienna Convention on the Law of Treaties, art. 53, May 23, 1969, 1155 U.N.T.S. 332, 8 I.L.M. 679).

9
Suggestion of Immunity by the United States
Case No. 2:15-cv-08130-ODW (GJSx)

as they did before the enactment of the FSIA. *See Samantar*, 560 U.S. at 321–25. Both before and after that decision, the United States has suggested immunity for former foreign officials who were alleged to have committed *jus cogens* violations. *See* U.S. Amicus Br. at 19–25, *Matar v. Dichter*, No. 07-2579-cv (2d Cir. Dec. 19, 2007); U.S. Amicus Br. at 23–34, *Ye v. Zemin*, No. 03-3989 (7th Cir. Mar. 5, 2004); *see also* Statement of Interest & Suggestion of Immunity at 7–11, *Rosenberg v. Lashkar-e-Taiba*, No. 1:10-cv-5381-DLI-CLP (E.D.N.Y. Dec. 17, 2012); Suggestion of Immunity at 6, *Doe v. De Leon*, No. 3:11-cv-01433-AWT (D. Conn. Sept. 7, 2012); Statement of Interest & Suggestion of Immunity at 5–8, *Giraldo v. Drummond Co.*, No. 1:10-mc-00764-JDB (D.D.C. Mar. 31, 2011). The courts deferred to the United States' Suggestions of Immunity in those cases. *See Matar*, 563 F.3d at 14-15; *Ye*, 383 F.3d at 626–27; *Rosenberg v. Pasha*, 577 F. App'x 22, 23–24 (2d Cir. 2014); *Doe v. De Leon*, 555 F. App'x 84, 85 (2d Cir. 2014); *Giraldo v. Drummond Co.*, 493 F. App'x 106 (D.C. Cir. 2012) (per curiam). The Department of State has determined that Barak is immune from suit. The Court must defer to that determination, notwithstanding Plaintiffs' allegations of *jus cogens* violations.

### C.    The TVPA Does Not Override the Immunity of Foreign Officials

Plaintiffs also err in suggesting that Congress abrogated immunity under the common law for foreign officials accused of torture or extrajudicial killing. Opp'n at 9. Indeed, they argue that the TVPA does so "unambiguous[ly]." Opp'n at 10. This is plainly incorrect, as the TVPA is entirely silent as to whether it limits the immunities of foreign officials. Indeed, Plaintiffs can cite no portion of the TVPA that references or mentions common law immunity. As the Supreme Court has noted, "[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993) (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)); *see also The Schooner Exch. v. McFaddon*, 11 U.S. 116, 146 (1812) (noting that courts may not infer a

rescission of foreign sovereign immunity unless expressed by the political branches "in a manner not to be misunderstood"). The TVPA lacks any such clear statement abrogating immunity.

Indeed, the Court of Appeals for the D.C. Circuit rejected on this basis the proposition that the TVPA supersedes common law head-of-state immunity. *See Manoharan v. Rajapaksa*, 711 F.3d 178, 180 (D.C. Cir. 2013) (per curiam). The D.C. Circuit relied on "'[t]he canon of construction that statutes should be interpreted consistently with the common law[, which] helps us interpret a statute that,' as here, 'clearly covers a field formerly governed by the common law.'" *Id*. at 179 (quoting *Samantar*, 560 U.S. at 320). Finding no "language [in] the TVPA . . . [that] supersedes the common law," the D.C. Circuit "conclude[d] that the common law of head of state immunity survived enactment of the TVPA." *Id*. at 180. The same is true of the common law of foreign official immunity more generally.

The legislative history of the TVPA further confirms that the TVPA does not abrogate common law foreign official immunity. The Senate Judiciary Committee Report ("Senate Report") specifically states that the "TVPA is not meant to override the Foreign Sovereign Immunities Act (FSIA) of 1976, which renders foreign governments immune from suits in U.S. courts, except in certain instances." S. Rep. No. 102-249, at *7 (1991) (footnote omitted). Additionally, the Senate Report emphasizes that the TVPA was not intended to override diplomatic and head-of-state immunities. *Id*. at *7–*8; *see also* H.R. Rep. No. 102-367, at *5 (1991) ("[N]othing in the TVPA overrides the doctrines of diplomatic and head of state immunity."). With respect to conduct-based immunity, the legislative history indicates that Congress believed that foreign states rarely would request immunity on behalf of an official in cases where torture or extrajudicial killing occurred—since states would rarely "admit some knowledge or authorization of relevant acts." Senate Report at *8 (internal quotation marks omitted). But the converse implication is that where, as here, the foreign state has asserted that

11

the acts alleged were taken in an official capacity, the Senate Judiciary Committee understood that the TVPA would not override foreign official immunity.[8]

Contrary to Plaintiffs' assertion, reading the TVPA in harmony with the immunities of foreign officials does not render the TVPA a "[v]irtual [n]ullity." Opp'n at 12. For example, foreign officials may be liable under the TVPA, even for official acts, where the parent state waives their immunity. *See In re Estate of Ferdinand Marcos*, 25 F.3d at 1472 (noting the "Philippine government's agreement that the suit against Marcos proceed"). And a foreign official will be subject to liability under the TVPA in any case where the Executive Branch informs the court that it has decided not to recognize the foreign official's claim of immunity from suit, as was the case in *Samantar*. Here, however, the Executive Branch has determined that Barak is immune from suit under the TVPA.

## CONCLUSION

The Executive Branch has determined that former Israeli Defense Minister Ehud Barak is immune from this suit.

DATED: June 10, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director
Federal Programs Branch

*/s/ Jason Lee*
JASON LEE (CA Bar No. 298140)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20001
(202) 514-3367
(202) 616-8470 (fax)

---

[8] The Senate Report operated under the assumption that the FSIA governs the immunity of foreign officials. *See* Senate Report at *8. That assumption was proved incorrect by the Supreme Court's decision in *Samantar*. *See* 560 U.S. at 308.

Jason.Lee3@usdoj.gov

*Attorneys for the United States of America*

Suggestion of Immunity by the United States
Case No. 2:15-cv-08130-ODW (GJSx)